**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DAVID C. DYAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00601-TWP-TAB |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, David C. Dyar ("Mr. Dyar"), requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

The ALJ rendered a decision denying Mr. Dyar's claim. (Filing No. 11 at 1.) Thereafter, the Appeals Council denied Mr. Dyar's request for review of the ALJ's decision, making it the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *Id.* *See* 20 C.F.R. § 404.981. On April 15, 2015, Mr. Dyar filed his appeal to the Court.

**I. BACKGROUND**

**A.   Procedural History**

On March 20, 2012, the Plaintiff, David C. Dyar ("Mr. Dyar"), filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 15, 2009. (Filing No. 9-2 at 13.) The initial claim was denied by the Social Security Administration, and again upon reconsideration. Mr. Dyar filed a timely request for a hearing a hearing and on

November 4, 2013, a hearing was held before Administrative Law Judge, John H. Metz ("ALJ"). At the hearing, Mr. Dyar, Dr. Robert B. Sklaroff ("Dr. Sklaroff"), an impartial medical expert; and Gail H. Franklin ("Ms. Franklin"), an impartial vocational expert, each testified. The ALJ rendered a decision denying Mr. Dyar's claim. (Filing No. 11 at 1.) Thereafter, the Appeals Council denied Mr. Dyar's request for review of the ALJ's decision, making it the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *Id. See* 20 C.F.R. § 404.981. On April 15, 2015, Mr. Dyar filed his appeal to the Court.

**B.    Relevant Medical History**

Mr. Dyar was born on April 15, 1957, making him fifty-two years old at his alleged onset date of disability. (Filing No. 9-6 at 2.) He is married and has no children under the age of eighteen. He is college educated, having earned a Bachelor's degree in Accounting. From January 1990 until May 2007, Mr. Dyar worked as Chief Executive Officer of Westfield Hospital. Most recently, in 2010, he was employed for a period of two weeks as a healthcare consultant. (Filing No. 9-2 at 33.) Mr. Dyar is six feet tall and weighs approximately 180 pounds. He alleges disability based on chronic back pain.

Mr. Dyar is a long-time patient of Dr. Young Ki Park, ("Dr. Park"), sharing a medical relationship spanning over fifteen years. He is also a long-time patient of Dr. Theodore Brogan ("Dr. Brogan"), sharing a medical relationship for over five years. (Filing No. 9-2 at 49.) Dr. Park's records, confirmed by images of the lumbar spine dated 2010 and 2011, indicate that Mr. Dyar has been treated for various problems including low back pain caused by multilevel degenerative disc disease. (Filing No. 9-2 at 17.) These images revealed mild disc hydration, with shallow left-sided protrusion causing mild impingement of the left L5 lumbar nerve root. *Id.* On several occasions, Dr. Park treated Mr. Dyar with acupuncture, and Mr. Dyar reported that it

temporarily relieved his symptoms. (Filing No. 12 at 3.) In addition, Mr. Dyar's back pain has been treated with prescribed medication including, Hydrocodone, Oxycodone, Soma, and epidural steroid injections, which he has reported to bring about some relief. (Filing No. 9-2 at 17; Filing No. 11 at 9-10.)

In 2012, Mr. Dyar was treated at Ortho Indy for his back issues under another physician, Dr. Robert Clayton ("Dr. Clayton"). (Filing No. 12 at 4.) Dr. Clayton observed that Mr. Dyar had a slightly antalgic gait in his left hip along with pain on rotation and flexion. Dr. Clayton diagnosed Mr. Dyar with osteoarthritis in his left hip, and recommended a total hip replacement.

Upon further examination, Mr. Dyar's healthcare providers concluded that surgery was not an option for Mr. Dyar, due to his low blood platelet count. *Id.* Officials at the Social Security Administration believe that Mr. Dyar's low blood platelet count is a result of his heavy alcohol consumption. *Id.* However, Mr. Dyar and Dr. Park attribute the low blood platelet count to the heavy intake of aspirin or aspirin-like medication by Mr. Dyar. (Filing No. 9-8 at 23.)

In 2012, Mr. Dyar continued to see Dr. Brogan as his primary care physician. (Filing No. 11 at 7-8.) In fact, since his initial consultation with Dr. Brogan in 2008, Mr. Dyar has had over nineteen medical visits with his primary care physician. Dr. Brogan's records confirm what the other physicians have diagnosed, which is that Mr. Dyar has a slow gait, degenerative disc disease and nerve root impingement. *Id.* However, unlike the Social Security Administration physicians, Dr. Brogan has stated in his professional opinion that Mr. Dyar's health issues render him totally and permanently disabled. *Id.*

**B.** **Expert Testimony**

Dr. Sklaroff testified at the hearing in front of the ALJ and offered his medical evaluation of Mr. Dyar. (Filing No. 9-2 at 60-77.) Dr. Sklaroff did not personally examine Mr. Dyar, and

his expert opinion was based solely on his evaluation of the medical evidence of record and Mr. Dyar's hearing testimony. *Id.* at 61. Nonetheless, Dr. Sklaroff opined that Mr. Dyar was not disabled; that he could lift ten pounds regularly and twenty pounds occasionally; and that he had the normal capacity to sit, walk, and stand with normal breaks for a period of six hours daily. *Id.* at 65. In addition, Dr. Sklaroff testified that Mr. Dyar should have no restrictions on pulling or pushing objects, going up or coming down stairs and ladders, or driving. *Id.* at 66.

Dr. Sklaroff testified that an MRI of Mr. Dyar, taken on March 10, 2011, showed mild disc dehydration, mild vascular arthritis, no nerve compression, no foraminal or lateral disc protrusion. *Id.* at 63-64. Therefore, Dr. Sklaroff ruled out the possibility of Mr. Dyar suffering from radiculopathy. *Id.* at 64. Dr. Sklaroff also stated that any mental confusion that Mr. Dyar alleges could possibly be coming from his alcohol intake rather than the pain medication he is prescribed for his illnesses. *Id.* at 65.

At the November 4, 2013 hearing, the VE testified that in her opinion, despite his physical limitations, Mr. Dyar could still satisfactorily perform in comparable positions he has held in the past as CEO and consultant. *Id.* at 76. Additionally, the VE stated that Mr. Dyar's work skills were transferable to other sedentary positions including both clerical and supervisory positions. *Id*. at 77. Furthermore, the VE acknowledged that if Mr. Dyar was to unexpectedly require naps or resting periods of up to an hour at a time, the napping would make it hard if not impossible for him to maintain employment. *Id.* at 78.

## C.     **The ALJ's Decision**

The ALJ first determined that Mr. Dyar met the insured status requirements through September 30, 2014. (Filing No. 9-2 at 15.) The ALJ then began the five-step disability analysis. At step one, the ALJ found that Mr. Dyar had not engaged in substantial gainful activity since May

15, 2009, the alleged onset date. *Id*. At step two, the ALJ found that Mr. Dyar had the following severe impairments: disorders of the spine and osteoarthritis of the hips. *Id.* At step three, the ALJ concluded that Mr. Dyar did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ determined that Mr. Dyar had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). *Id.* at 16. The ALJ specified that Mr. Dyar has the ability to lift and carry twenty pounds occasionally and ten pounds frequently. *Id.* Additionally, the ALJ determined that Mr. Dyar can sit, stand and walk six hours each during an eight hour workday. *Id.* Lastly, the ALJ stated that Mr. Dyar should avoid climbing ladders, ropes, or scaffolds or work at unprotected heights. *Id.*

Ultimately, the ALJ relied heavily on the vocational expertise of the VE and decided that Mr. Dyar is capable of performing his past relevant work as a chief executive officer, and/or consultant. *Id*. at 19. Thus, the ALJ found Mr. Dyar not to be disabled. *Id.* It should be noted that because Mr. Dyar was found not to be disabled in step four of the analysis, the ALJ did not need to discuss step five of the analysis, which would have shifted the burden to the Commissioner of the Social Security Administration to show that Mr. Dyar could perform any other work in the economy.

## II. LEGAL STANDARD

### A. Disability Determination

Under the Social Security Act, a claimant is entitled to disability insurance benefits or supplemental security income if he establishes he has a disability. 42 U.S.C. §§ 423(a)(1)(E), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The Listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each Listing, there

are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a Listing, then the ALJ assesses the claimant's residual functional capacity for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The claimant is not disabled if he can perform any other work in the relevant economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

B.      **Review of the Commissioner's Final Decision**

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the District Court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft*, 539 F.3d at 673; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the court in its review of whether the Commissioner's final decision was supported by substantial evidence.  *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do.").  While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence.  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected.  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion.  *Terry*, 580 F.3d at 475; *Rohan v. Chater*,

98 F.3d 966, 971 (7th Cir. 1996).  Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski*, 245 F.3d at 888–89; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III.  DISCUSSION

Mr. Dyar argues that the ALJ erred by treating the medical opinion of his primary care physician, Dr. Brogan, with little weight, rather than affording it controlling weight.  (Filing No. 11 at 17.)  Mr. Dyar contends that such error was further compounded by the ALJ's decision to afford significant weight to the opinion of Dr. Sklaroff, the non-examining, non-treating physician. *Id.*  Additionally, Mr. Dyar contends that the evidence the ALJ relied on to make his RFC determination, and ultimately his disability determination, was inaccurately portrayed and insufficient to build a logical bridge to his conclusions.

In regards to Mr. Dyar's first argument, the Court is persuaded that the ALJ failed to adequately articulate reasons for discounting Dr. Brogan's medical opinion and considers remand appropriate on this issue.  Additionally, on remand, the Court considers it necessary that the ALJ further review the evidence he relied upon in making his RFC determination, as there appears to be potential inconsistencies between the record and the ALJ's conclusions.

**A.      The ALJ inadequately explained his reasons for discounting the medical opinion of Mr. Dyar's treating physician, Dr. Brogan.**

First, Mr. Dyar asserts that the ALJ improperly discounted the opinion of his treating physician, Dr. Brogan, by insufficiently articulating his reasons for giving the opinion little weight.  The Court agrees.

A treating physician's opinion regarding the nature and severity of a medical condition is ordinarily entitled to controlling weight if the opinion is well supported by the medical findings and is consistent with substantial evidence in the record.  *See Hofslien v. Barnhart*, 439 F.3d 375,

9

376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). More weight is generally afforded a treating physician's opinion because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 416.927(c)(2).

However, while the treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); 20 C.F.R. § 404.1527(d)(1). Accordingly, if a treating physician's medical opinion is internally inconsistent or inconsistent with other evidence in the record, an ALJ is entitled to give the opinion lesser weight. *Schmidt*, 496 F.3d at 842. Indeed, when evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's opinion becomes "just one more piece of evidence for the ALJ to weigh." *Hofslien*, 439 F.3d at 377.

An ALJ's decision to give lesser weight to a treating physician's opinion is afforded deference, so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2011); *Copeland v. Astrue*, No. 3:09-CV-431 JD, 776 F. Supp. 2d 828, 836 (N.D. Ind. Mar.1, 2011); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."). The Seventh Circuit has characterized this deferential standard as "lax." *Berger*, 516 F.3d at 545; *Brown v. Astrue*, No. 1:10-CV-1035-SEB, 2011 WL 2693522, *3 (S.D. Ind. July 8, 2011).

Once an ALJ decides to give lesser weight to a treating physician's opinion, the ALJ still must determine what weight the physician's opinion is due under the applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). Factors the ALJ should consider when determining the weight to give the treating physician's opinion include the length, nature, and extent of the treatment relationship, whether the physician supported his

opinion with sufficient explanations, and whether the physician specializes in the medical conditions at issue. *See Elder*, 529 F.3d at 415-16; 20 C.F.R. 404.1527(c)(2).

> Regarding the weight afforded to Dr. Brogan in Mr. Dyar's case, the ALJ stated as follows:
>
> As to the claimant's functional limitations, the record contains a statement from the claimant's treating source, Dr. Brogan, who indicates that the claimant has lumbar spine degenerative disc disease with lower extremity radiculitis that significantly limits walking, standing and sitting. He opined the claimant is permanently and totally disabled. I give his opinion little weight as his opinion contrasts sharply with the other evidence of record, which renders it less persuasive.

(Filing No. 9-2 at 18.)

The ALJ in this case did not articulate sufficiently which evidence is inconsistent with Dr. Brogan's medical opinion. While the ALJ listed some inconsistencies between Mr. Dyar's testimony and the record, the ALJ made no attempt to connect such inconsistencies with his decision to give Dr. Brogan's opinion little weight. In fact, the ALJ did not specify any evidence on the record that "contrasts sharply" with Dr. Brogan's opinion. As a result, the Court is left to impermissibly guess the ALJ's reasons for discounting Dr. Brogan's opinion. While there is no requirement that the ALJ discuss every piece of evidence presented in his opinion, he is required to minimally explain his reasons for reaching his conclusions, and must support them with adequate evidence from the record. *See Craft*, 539 F.3d at 673 ("[t]he ALJ is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion"); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 1997) (noting that an ALJ "must articulate, at least minimally, his analysis of the evidence so that the Court can follow his reasoning.").

In an apparent effort to fill in the gaps and provide justification for the ALJ's decision, the Commissioner notes several pieces of information cited by the ALJ in other parts of his opinion. For example, the Commissioner restates that results from the consultative examinations performed

by the Indiana State Disability Determination physicians showed that Mr. Dyar had normal flexion and extension of his hips. (Filing No. 12 at 8.) Also, the Commissioner notes that the ALJ considered the improvement reported by Mr. Dyar after taking pain medication as evidence of Mr. Dyar's ability to perform light work. (Filing No. 12 at 8.) Further, the Commissioner goes on to conclude that the ALJ reasonably decided not to treat Dr. Brogan's medical opinion with controlling weight because it contrasted the other evidence in the record. (Filing No. 12 at 14.)

While the Commissioner's restatement of the evidence may potentially support the ALJ's decision to afford Dr. Brogan's opinion lesser weight, the Commissioner's argument provides the Court with a logical connection that simply does not exist in the ALJ's decision. Instead, the Commissioner asks the Court to consider evidence cited by the ALJ, which the ALJ did not himself link to his treating physician opinion. Accordingly, the Commissioner's arguments in support of the ALJ's decision are nothing more than impermissible *post hoc* rationalizations, which the Court is not permitted to consider. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("principles of administrative law require the ALJ to rationally articulate the grounds for her decision;" and the court, therefore, "confines [its] review to the reasons supplied by the ALJ"); *Hendricks v. Astrue*, 1:08-CV-376-DFH, 2009 WL 648610, at *8 (S.D. Ind. March 11, 2009).

As written, the ALJ's opinion merely states inconsistencies between Mr. Dyar's testimony and evidence in the record; but the ALJ does not identify which specific inconsistencies influenced his decision. As such, the required logical bridge between the evidence cited and the ALJ's conclusions is not created. Consequently, remand is necessary because the ALJ failed to sufficiently articulate the reasons supporting his decision to not give Dr. Brogan's opinion

controlling weight. On remand, the ALJ must build "the logical bridge" between the evidence and his conclusion.

C. **The ALJ's decision is not clearly supported by the record, as there are potential inconsistencies between the record and the evidence cited.**

In addition, Mr. Dyar argues that the ALJ erred in his RFC determination due to the ALJ's reliance on inconsistent evidence. In this regard, Mr. Dyar identifies several potential factual inaccuracies, cited by the ALJ in support of his RFC determination, which the Court concludes must be re-examined on remand.

First, the ALJ noted that Mr. Dyar did not have any "positive findings" of ailments to his back or hip besides antalgic gait, and positive straight leg raises. (Filing No. 9-2 at 17.) However, various MRIs showed that Mr. Dyar had a degenerative disc disease and nerve root impingement. (Filing No. 11 at 13; Filing No. 9-7 at 4-5.) Additionally, x-rays demonstrated mild to moderate arthritis in Mr. Dyar's hips. (Filing No. 11 at 13; Filing No. 9-7 at 38-39.) The record also indicates that Mr. Dyar had a broad central disc bulge at L4-5. (Filing No. 9-7 at 3.) Lastly, the record also indicates that Mr. Dyar had radial and concentric annular fissures with a broad-based left central disc protrusion at L4 and L5. *Id.* at 25. In light of these undiscussed facts, the Court considers it necessary for the ALJ to review his conclusion that Mr. Dyar did not have "positive findings" of ailments, besides antalgic gait and positive straight leg raises.

Another potential misrepresentation of the record is the ALJ's statement "the claimant's medication dosage has remained the same." (Filing No. 9-2 at 17.) However, the record shows that, not only did Mr. Dyar's dosage increase during his alleged disability period, but also that Dr. Brogan made medication changes. (Filing No. 11 at 14; Filing No. 9-7 at 63.) Additionally, the ALJ stated that Mr. Dyar "was treated with medications inclusive of Hydrocodone, Oxycodone and Soma, in addition to epidural steroid injections with neurosurgeons and reported significant

13

improvement." (Filing No. 9-2 at 16.) However, while Mr. Dyar did report that pain medication was effective, it appears that the relief was merely temporary. (Filing No. 9-7 at 5.) On remand, the ALJ must review his conclusions concerning Mr. Dyar's medication dosage and relief, to ensure that such conclusions are consistent with the evidence on record.

Furthermore, the ALJ's detailing of Mr. Dyar's frequent activities is another potential misrepresentation. The ALJ writes that Mr. Dyar was able to attend to his own personal hygiene and groom, feed, walk his dog, and occasionally cook, and perform household chores including shopping with his wife. (Filing No. 9-2 at 19.) While the ALJ's statement accurately reflects portions of Mr. Dyar's testimony, the ALJ chose to omit other relevant facts such as Mr. Dyar's testimony that the frequency in which he shops with his wife is once every couple of weeks and that he only occasionally takes his dogs for walks. (Filing No. 9-2 at 44.) In addition, the ALJ did not include that Mr. Dyar also stated that he was unable to mop, dust, or vacuum because of the pain it caused his back. *Id.* at 40. While the ALJ is not required to discuss every piece of evidence in this case, the omission of this relevant testimony suggests that the ALJ may not have fully considered the extent of Mr. Dyar's actual abilities. On remand, the ALJ must review this omitted testimony and determine, if taking it into account, his conclusion regarding Mr. Dyar's daily activities remains the same.

## IV. CONCLUSION

For the reasons set forth above, this Court **REMANDS** the Commissioner's final decision for further proceedings pursuant to Sentence Four of 42 U.S.C. §405(g).

**SO ORDERED.**

Date: 6/20/2016

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

John P. Young
YOUNG & YOUNG
john@youngandyoungin.com